**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANNA EHRENBERG<br>1577 Sinkler Road<br>Warminster, PA 18974<br><br>Plaintiff,<br>v.<br><br>CHANT ENGINEERING CO., INC.<br>d/b/a CHANT<br>59 Industrial Boulevard<br>New Brittain, PA 18901<br><br>Defendant. | : | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Danna Ehrenberg (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Plaintiff against Chant Engineering Co., Inc. d/b/a Chant (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), Employee Retirement Income Security Act of 1974 ("ERISA" – Section 510, 29 U.S.C. § 1140), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under the ADA and ERISA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit under the ADA within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Chant Engineering Co., Inc. d/b/a Chant is a Pennsylvania corporation that provides engineering services and sells related products to various industries, including aerospace, automotive, and military sectors.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendant on or about November 10, 2025 as Human Resources ("HR") Manager.

12. Plaintiff was primarily supervised by the Vice President of Operations, Jules Dirienzo (hereinafter "Dirienzo") and Dirienzo's supervisor, President and Owner, Philip Chant (hereinafter "Chant").

13. As of 2026, Plaintiff was suffering from ongoing and severe rectal, abdominal, back, and bowel problems.

14. Plaintiff suffered spasms, continual bleeding, excruciating pain, digestion problems, and uncontrolled diarrhea in addition to numerous other symptoms and complications.

15. Plaintiff suffers from a significant history of health problems including but not limited to GERD, Colitis, hypertension, and heart problems.

16. Plaintiff's physicians also believed that Plaintiff likely had colon cancer as a result of the aforementioned symptoms.

17. Despite Plaintiff's serious health conditions and limitations, she was able to perform her job duties well; however, she (at times) required some reasonable medical accommodations, discussed further *infra*.

18. Plaintiff was having many health problems and knew she may need to miss some time from work; therefore, she attempted to confide in Dirienzo about her belief and expectation that she had colon cancer on or about February 16, 2026 by text message.

19. However, despite Dirienzo informing Plaintiff in text that he would keep quiet about Plaintiff's health, the very next day, on or about February 17, 2026, Dirienzo changed his attitude completely.

20. Dirienzo informed Plaintiff at work on or about February 17, 2026 that he could not keep Plaintiff's potential cancer diagnosis from his "friends" (in reference to the sales manager and Chant) and subjected Plaintiff to animated reactions such as "I can't lie for you," "this is serious," and "you have to tell my friends."

21. Dirienzo doubled down by informing Plaintiff she had to inform the sales manager and Chant (both of whom he called his "friends") about her potential diagnosis.

22. Plaintiff knows that Defendant was very sensitive about people at work who have disabilities because Dirienzo previously asked Plaintiff questions related to how employees' health problems impacted medical insurance premiums for Defendant.

23. Therefore, while Plaintiff felt extremely uncomfortable and distressed based on the foregoing, she ultimately felt she had no choice but to share with Defendant's other management that it was believed that she had colon cancer.

24. Plaintiff explained further that she was trying to be transparent with Defendant as she was expecting to miss time off work for further testing related to her potential colon cancer diagnosis.

25. Plaintiff thereafter missed some days intermittently for medical needs after her aforesaid (likely) "cancer" disclosure.

26. Plaintiff then required an approximate three-week medical leave of absence throughout March of 2026 (starting as of early March 2026).

27. Leading up to Plaintiff's medical leave, she additionally disclosed to Dirienzo that she was also dealing with Colitis and complications arising therefrom.

28. Plaintiff kept her management apprised of her medical-leave needs during her medical leave.

29. For example, on March 12, 2026, Plaintiff updated Dirienzo via email (at 5:41 AM) stating she will continue to provide updates but that she needed a short "disability leave" (as Plaintiff was unable to return to work by March 12, 2026).

30. On or about March 18, 2026 (during Plaintiff's medical leave), she was abruptly informed that she was terminated by Defendant via telephone call and then followed-up by a letter.

31. Plaintiff was, in essence, provided with 2 (two) reasons for her termination in an entirely false termination letter: (1) Defendant was allegedly dissatisfied with receiving a $15,883.15 bill from Indeed for job recruitment; and (2) Defendant blamed Plaintiff for a deposit in payroll going to an imposter's account wherein a net total of $3,823.10 was obtained by the imposter.

32. The aforesaid reasons for Plaintiff's termination is just a summary, as Defendant made several defamatory and false statements in Plaintiff's termination letter, presumably to conceal its true discriminatory/retaliatory motive and scare Plaintiff into not pursuing a wrongful termination case.

33. After Defendant gave entirely pretextual reasons for Plaintiff's termination during her medical leave, Defendant also made a clear reference to its perception of Plaintiff's health problems, stating:

> ***We know you are going through a difficult time personally***, but we cannot overlook this significant error and lapse of judgement. We are offering you a severance package to lessen the financial hardship of securing new employment. Enclosed is a Severance Agreement for your review. As provided in the Agreement you have 21 days to review the Agreement. If you execute the Agreement, return it within the 21-day review period and do not revoke it within 7 days, we will pay the severance outline in the Agreement.

(emphasis added)

34. Plaintiff did not succumb to the pressure of signing a severance agreement based upon fallacious reasoning given to her for her termination and refused to sign said agreement.

35. The assertation about blaming Plaintiff for a direct-deposit issue is entirely false as the direct deposit which was mishandled was not attributable to Plaintiff or her fault.

36. The issues culminating in such direct deposit were outside Plaintiff's purview, outside her typical practices, and handled or processed when she was not even present.

37. The inference that Plaintiff also somehow deceived Defendant regarding the invoice it received from Indeed is also absurd and pretextual.

38. During Plaintiff's time working for Defendant, she had bi-weekly meetings with Dirienzo wherein they co-created an agenda to talk about various topics, including but not limited to recruiting.

39. Within these meetings Plaintiff and Dirienzo discussed the cost of recruiting.

40. Specifically, Dirienzo one day logged into Defendant's recruiting account with Plaintiff to review the billing for Defendant.

41. Plaintiff also directly asked Defendant's management if Defendant could pay for Indeed and she was told "let's give it a shot," *as everyone agreed Defendant needed to hire qualified applicants as soon as possible.*

42. Plaintiff showed DiRienzo in their meetings how Indeed charges, even illustrating the cost of clicks for reviewing applicants.

43. In total, Respondent was paying about $1,600.00 per job position (spanning several months of searching) to obtain extensive visibility and applications or resumes, which is fairly normal within the market for advertising.

44. In addition to having detailed discussions about Defendant's recruiting with Dirienzo, Plaintiff also received praise from Chant regarding her recruiting efforts, wherein Chant, on more than one occasion, told Plaintiff that Defendant had been receiving "better resumes" and that Plaintiff should "keep paying for it" (in reference to Defendant's recruiting subscription with Indeed).

45. At all times, Chant and his son were copied on all resumes that were screened by Plaintiff and then forwarded to Defendant's hiring manager(s).

46. To be clear, Plaintiff did not impermissibly run up expenses, exceed a set budget, or misuse a credit card relating to performance of duties for Defendant.

47. Additionally, Plaintiff was never prohibited, restricted, limited, or given any sort of budget, and to state otherwise (as Defendant alleged in their letter) is utterly false.

48. Lastly, other employees at Defendant committed far worse infractions than what Plaintiff was accused to have done; however, they were not terminated for the same.

49. For example, one employee actually committed credit card fraud (using a credit card for tobacco, gifts, and impermissible expenses), and he was not terminated (per the same management who terminated Plaintiff).

50. The reasons given to Plaintiff for her termination were far-fetched, incredible, and feigned pretexts to justify her false termination.

51. Knowing that its reasons were pretext for their true discriminatory and retaliatory reasons for terminating Plaintiff's employment, Defendant offered Plaintiff $8,846.40 in severance if she signed an unsolicited general release agreement waiving all possible legal claims, including discrimination and retaliation.

52. It is not plausible that an employee who is terminated for gross misconduct would be offered a severance package and this is a well-established form of admissible evidence to demonstrate pretext for discrimination and retaliation.[2]

53. Plaintiff believes and therefore avers that she was terminated for discriminatory and retaliatory reasons in violation of federal law.

---

[2] *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013) (an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D.Ind. 2011) (finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Barlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; & [4] Hostile Work Environment)**

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff suffers from qualifying health conditions under the ADA which affects her ability (at times) to perform some daily life activities.

56. Plaintiff kept Defendant's management informed of her disabilities and need for medical accommodations related to the same.

57. For example, prior to Plaintiff's medical leave and termination mid-medical leave, Defendant knew Plaintiff had Colitis, was presumed to have "cancer," that she took leave for a "disability" (per her email), and that she was having many other symptoms (as aforementioned).

58. Plaintiff was terminated from her employment with Defendant on or about March 18, 2026, for completely pretextual reasons ***just days*** after requesting/utilizing reasonable accommodations and while she was still on an ADA-qualifying disability leave.

59. Defendant failed to properly accommodate Plaintiff by refusing to allow her to take a brief medical leave related to her serious health conditions and instead terminating her employment while she was still on medical leave.

60. Plaintiff believes and therefore avers that her actual, perceived, and/or record of disability was a motivating or determinative factor in Defendant's decision to terminate her employment.

61. Plaintiff also believes and avers that she was terminated in retaliation for requesting and/or utilizing reasonable medical accommodations.

62. These actions as aforesaid constitute violations of the ADA.

**Count II**
**Violations of ERISA – Section 510, 29 U.S.C. § 1140**
**(Interference & Retaliation)**

63. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64. During Plaintiff's employment with Defendant, she maintained health insurance through Defendant's group health insurance plan and exercised her rights under ERISA by utilizing her health insurance benefits.

65. During Plaintiff's employment, she observed Defendant's management show concern and be very sensitive about people at work who have disabilities, as Dirienzo would ask Plaintiff questions related to how employees' health problems impacted medical insurance premiums for Defendant.

66. In close proximity to when Plaintiff started to utilize her health care benefits, she was abruptly terminated from her employment.

67. Upon information and belief, a motivating factor in Plaintiff's termination was because she exercised her rights under her ERISA qualified group health plan.

68. Plaintiff was also specifically terminated to interfere with and prevent her from further exercising her rights under her ERISA-qualifying group health benefit

69. Plaintiff's termination for engaging in the aforesaid protected activity therefore constitutes violations of ERISA, Section 510.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority; Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: October 27, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Danna Ehrenberg | : | CIVIL ACTION |
| v. | : | |
| Chant Engineering Co., Inc. d/b/a Chant | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/27/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:____________ Judge:____________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

EHRENBERG, DANNA

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

CHANT ENGINEERING CO., INC. D/B/A CHANT

County of Residence of First Listed Defendant: Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
ADA (42USC12101); ERISA (29USC1140)

Brief description of cause:
Violations of the ADA, ERISA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 10/27/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______